874 F.2d 661
 19 Envtl. L. Rep. 20,861
 NORTHERN PLAINS RESOURCE COUNCIL, McCone Agricultural
Protection Organization, and Montana Wildlife
Federation, Plaintiffs-Appellants,
v.
Manuel LUJAN, Jr.,* Secretary of the Interior,
United States Department of the Interior, Meridian Minerals
Co., Burlington Northern Inc. and Burlington Northern
Railroad Co., Defendants-Appellees.
 No. 87-4453.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 9, 1989.
Decided May 9, 1989.
 
 1
 James A. Patten, Billings, Mont., and David C. Masselli, Arlington, Va., for plaintiffs-appellants.
 
 
 2
 Myles E. Flint, Fred R. Disheroon, Jacques B. Gelin, and Dirk D. Snel, Dept. of Justice, Washington, D.C., for defendant-appellee Secretary of the Interior.
 
 
 3
 Guy R. Martin, William A. Gould, Donald C. Baur, Perkins, Coie, Washington D.C. for defendants-appellees Burlington Northern Inc. and Burlington Northern R. Co.
 
 
 4
 Steven P. Quarles, Thomas R. Lundquist, Crowell & Moring, Washington, D.C., and Stephen H. Foster, Holland & Hart, Billings, Mont., for defendant-appellee Meridian Minerals Co.
 
 
 5
 Appeal from the United States District Court, District of Montana at Billings.
 
 
 6
 Before WRIGHT and ALARCON, Circuit Judges, and TEVRIZIAN,** District Judge.
 
 TEVRIZIAN, District Judge:
 I. STATEMENT OF FACTS
 
 7
 Appellants Northern Plains Resource Council, McCone Agricultural Protection Organization, and Montana Wildlife Federation (collectively "NPRC") appeal from the decision of the district court granting summary judgment in favor of appellees Meridian Minerals Company, Burlington Northern Inc., and Burlington Northern Railroad Company, et al. ("Companies") and Donald Hodel, Secretary of the Interior ("Interior"), and dismissing the complaint in the underlying action. The underlying action is a challenge to an exchange of fee coal interests ("exchange") between Meridian Minerals Company ("Meridian") and the United States Department of the Interior consolidating ownership in the Circle West coal deposit in McCone County, Montana. The exchange was completed in September 1983. The district court's opinion is reported at 675 F.Supp. 1231 (D.Mont.1987).
 
 
 8
 An action against the exchange was also filed by the National Coal Association and the Mining and Reclamation Council of America ("NCA/MRC"). The district court partially consolidated the two actions on the common issues regarding the legality of the exchange under Section 206 of the Federal Land Policy and Management Act of 1976 ("FLPMA") and the reasonableness of the public interest determination made by the Department of the Interior as required by the FLPMA. 675 F.Supp. at 1236. These are claims 1 through 4 of the NPRC suit (85-150-BLG-JFB) and claims 1 through 4 and 11 of the NCA/MARC suit (85-115-BLG-JFB). The unconsolidated claims 5 through 11 concern compliance with equal value, land use planning and National Environmental Policy Act of 1969 ("NEPA") requirements. This appeal is brought only as to the unconsolidated claims.
 
 
 9
 Meridian proposed the Circle West exchange in November 1981. The Bureau of Land Management ("BLM") conducted a study of the proposal and released its environmental assessment in December 1982. After requesting and considering written comments from the public, the BLM approved the exchange in May 1983. On September 8, 1983, Interior approved the BLM decision finding the fee interests appropriate for exchange under Section 206 of the FLPMA, 43 U.S.C. section 1716. This approval constituted final agency action by the Interior. 675 F.Supp. at 1234-35.
 
 
 10
 Prior to the exchange, Meridian and Interior held land and mineral interests in alternating sections in a checkerboard pattern created by the terms of 19th century land grants. Each section is too small to support an independent and economically feasible coal mining operation. The exchange consolidates one tract for Interior and one for Meridian by conveying to Interior all of Meridian's fee coal rights to the southern half of the Circle West deposit, and conveying to Meridian all of Interior's fee coal rights to the northern half of the Circle West deposit. Interior now has the consolidated southern tract for federal coal leasing, and Meridian now has the consolidated northern tract for development or leasing. 675 F.Supp. at 1235. As a result of the exchange, Interior received 11,553 acres of fee coal containing approximately 198.2 million tons of recoverable coal, and a one percent royalty on the coal produced from Meridian's post-exchange tract. Meridian received 7,887 acres of fee coal containing approximately 159.9 million tons of recoverable coal. Interior's appraisal of the exchange value showed that Interior was receiving $7.785 million in excess value (without the royalty) or $13.278 million in excess value over what it deeded to Meridian (with the royalty). 675 F.Supp. at 1235, 1245.
 
 
 11
 On appeal, appellants raise the following issues:
 
 
 12
 1. Whether Section 102(2)(C) of the NEPA requires preparation of a separate environmental impact statement on the exchange, or whether a prior draft and final environmental impact statement on federal regional coal leasing and an environmental assessment pertaining to the exchange satisfies the statutory requirement;
 
 
 13
 2. Whether the exchange complied with the "equal value" requirement of Section 206(b) of the FLPMA; and
 
 
 14
 3. Whether Interior reasonably interpreted its exchange regulations in finding that the exchange conformed with the operative federal land use plan without requiring BLM to amend the plan prior to the exchange.
 
 II. DISCUSSION
 
 15
 The district court had jurisdiction pursuant to 28 U.S.C. section 1331. This court's jurisdiction rests on 28 U.S.C. section 1291. As will be explained below, neither the district court nor this court has proper jurisdiction over plaintiffs-appellants' equal value claims. Plaintiffs' appeal is timely, having been filed on December 22, 1987, within 60 days of judgment as required by Federal Rule of Appellate Procedure 4(a)(1).
 
 
 16
 A. Interior's reliance on the environmental assessment and regional coal leasing environmental impact statements
 
 
 17
 Appellants' claims on this issue involve Interior's interpretation of regulations governing the preparation of environmental impact analyses. Appellants contend that the applicable regulations require Interior to produce a separate environmental impact statement ("EIS") or to make a finding of no significant impact with regard to the exchange. Appellants argue that Interior's reliance on an environmental assessment relating to the exchange which incorporates prior environmental impact statements on the impact of federal regional coal leasing is statutorily inadequate. The district court held that Interior complied with the environmental impact regulations, Section 102(2)(C) of the NEPA, 42 U.S.C. section 4332(2)(C), and that the exchange was proper. 675 F.Supp. at 1247-49. We affirm.
 
 
 18
 As an initial matter we consider the applicable standard of review. Contrary to appellants' contention that NEPA issues are reviewed de novo, this court will only reverse a district court's finding that an environmental impact statement is adequate if the district court's decision is based upon an erroneous legal standard or upon clearly erroneous findings of fact. Stop H-3 Association v. Dole, 740 F.2d 1442, 1460-62 (9th Cir.1984), cert. denied, 471 U.S. 1108, 105 S.Ct. 2344, 85 L.Ed.2d 859 (1985). In turn, the district court reviews the adequacy of the EIS under a rule of reason: if the EIS contains a "reasonably thorough discussion of the significant aspects of the probable environmental consequences", a reviewing court may not "fly speck" an EIS and hold it insufficient on the basis of inconsequential, technical deficiencies. Oregon Environmental Council v. Kunzman, 817 F.2d 484, 492 (9th Cir.1987). Thus, the EIS review standard is limited and decidedly deferential to the agency's expertise. NRDC v. Hodel, 819 F.2d 927, 929 (9th Cir.1987). And where the review involves the interpretation of a regulation, the agency's interpretation of its own regulation is to be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. Marathon Oil Co. v. United States, 807 F.2d 759, 765 (9th Cir.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987).
 
 
 19
 The land and mineral interests covered by the exchange are part of the Fort Union Coal Region. This Region is one of twelve coal supply regions, and is one of the six such regions containing significant amounts of federally owned coal. In September 1981, BLM's Montana State Director issued the Fort Union Coal Region Tract Summaries, which summarized the consequences of leasing and developing federally owned coal in 24 tracts selected for further evaluation. Three of these 24 tracts are the Circle West I, II, and III tracts, which cover some but not all of the area involved in the instant Circle West exchange.
 
 
 20
 After Meridian proposed the exchange in December 1981, BLM's State Director issued a decision document in March 1982 announcing that the exchange warranted further consideration. In June 1982, BLM published its intent to pursue the exchange and to complete an environmental assessment. Fed.Reg. 24451, June 1982. In July 1982, BLM issued a comprehensive draft environmental impact statement on six alternative levels of coal leasing and development for the Fort Union Coal Region ("Fort Union DEIS"), including a specific discussion of the Circle West exchange. In September 1982, BLM issued an Air Quality Supplement, and in December 1982 BLM issued an environmental assessment ("EA"), to which appellants submitted 41 pages of comments. In February 1983 BLM issued the Fort Union Final EIS, which incorporated by reference the DEIS and the Air Quality Supplement.
 
 
 21
 In April 1983, BLM issued its "Decision Document/Lands Report" concerning the exchange. The document summarized the previous meetings, discussions and studies, and expressly concluded that the exchange conformed to the Redwater Management Framework Plan, the operative federal land use plan. BLM signed the "Record of Decision" on April 26, 1983, and signed the exchange agreement on September 8, 1983. The agreement noted that the value of government coal patented to Meridian was less than the value of the coal deeded to the United States, and thus a cash equalization payment was due to Meridian under Section 206(b) of the FLPMA. Meridian waived such a payment and donated it as a gift to the United States pursuant to Section 205 of the FLPMA, 43 U.S.C. section 1715.
 
 
 22
 Interior analyzed the site-specific impacts of the exchange and the individual federal lease tracts in the Tract Summaries and the EA, which were incorporated by reference into the Fort Union EIS. The cumulative impacts of these coal development actions on the Fort Union region and the significant cumulative site-specific impacts were also discussed in the EIS. The EA analyzing the exchange must be read together with the Fort Union Regional draft and final EIS reports, and all supporting documentation taken as a whole. See Southern Oregon Citizens v. Clark, 720 F.2d 1475, 1480 (9th Cir.1983), cert. denied, 469 U.S. 1028, 105 S.Ct. 446, 83 L.Ed.2d 372 (1984). Since the NEPA does not require a separate analysis of alternatives with consequences indistinguishable from the action proposed, NRDC v. SEC, 606 F.2d 1031, 1054 (D.C.Cir.1979), Interior's discussion of coal development by leasing also covers coal development by exchange. Indeed, we have previously held that Interior must consider related coal actions in a single EIS. Cady v. Morton, 527 F.2d 786, 795 (9th Cir.1975); see Kleppe v. Sierra Club, 427 U.S. 390, 410, 96 S.Ct. 2718, 2730, 49 L.Ed.2d 576 (1976). So long as the significant environmental impacts are addressed in the EIS at issue, a separate EIS on the exchange is not required. Columbia Basin Land Protection Association v. Schlesinger, 643 F.2d 585, 597 (9th Cir.1981). Moreover, the NEPA does not require Interior to make site-specific analysis of the impacts of all possible development alternatives. Instead, the NEPA merely requires that Interior estimate the impacts of a likely or probable development alternative; it need not prepare an EIS for speculative development alternatives, so long as it reserves the right to preclude or prevent actions with unacceptable environmental consequences. See Conner v. Burford, 848 F.2d 1441, 1451 (9th Cir.1988), cert. denied sub. nom Sun Exploration & Production Co. v. Lujan, --- U.S. ----, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989); Conservation Law Foundation v. GSA, 707 F.2d 626, 634 (1st Cir.1983).
 
 
 23
 The EIS at issue considered the impacts of two alternative generic synthetic fuel plants. Since a federal coal lease creates no entitlement to construct an on-site fuel plant, and such a plant requires separate authorization under the FLPMA, 43 U.S.C. sections 1761-71, Interior could lawfully defer a detailed site-specific discussion of a proposed plant until a later EIS. Sierra Club v. FERC, 754 F.2d 1506, 1509-10 (9th Cir.1985); Village of False Pass v. Clark, 733 F.2d 605, 615 (9th Cir.1984). This is exactly what the district court held here. 675 F.Supp. at 1249. Moreover, since any fuel plant would be subject to extensive state regulation, any site-specific discussion of a proposed plant in the Interior's EIS would, at this stage, be too speculative. See Enos v. Marsh, 769 F.2d 1363, 1373 (9th Cir.1985).
 
 
 24
 The district court, after considering the environmental impacts assessed by the Tract Summaries, the EA, and the Fort Union EIS, found that the agency was sufficiently informed of the development alternatives and the reasonably foreseeable significant environmental impacts that would result as a consequence of the exchange. 675 F.Supp. at 1248. The district court also found that since the specific impacts on the full exchange acreage were the same as the impacts addressed in the Tract Summaries incorporated into the EIS, it was reasonable not to prepare another EIS summarizing the same impacts on additional acreage. Id. We do not find that the district court applied an erroneous legal standard or that the court's holding was based upon clearly erroneous findings of fact. Stop H-3 Association v. Dole, 740 F.2d 1442, 1460-62 (9th Cir.1984), cert. denied, 471 U.S. 1108, 105 S.Ct. 2344, 85 L.Ed.2d 859 (1985). Thus we affirm the district court's finding that Interior complied with the NEPA though it did not produce a separate EIS addressing only the Circle West exchange.
 
 
 25
 Appellants also claim that Interior violated three Council on Environmental Quality regulations: 40 C.F.R. sections 1502.4, 1502.2, and 1508.13. However, these alleged regulatory violations are raised for the first time on appeal. Absent exceptional circumstances, an issue not raised below will not be considered on appeal. United States v. Oregon, 769 F.2d 1410, 1414 (9th Cir.1985). No such circumstances are present here, especially given the limited scope of review of the agency decision. Thus, these claims are barred.
 
 
 26
 B. Interior's finding that the exchange complied with the "equal value" requirement of Section 206(b) of the FLPMA, 43 U.S.C. section 1716(b).
 
 
 27
 Appellants raise three issues to challenge Interior's finding that the exchange complied with the equal value requirement of the FLPMA: (1) that Interior should have devalued the coal conveyed to the United States by Meridian because of a special wildlife protection provision applicable to federally held lands; (2) that Interior did not consider the higher mining costs of the coal received by Interior; and (3) that Interior did not adequately explain the government's one percent royalty interest on Meridian's coal. These arguments challenge Interior's compliance with the statutory requirements of the FLPMA and thus challenge the validity of the land patents deeded to Meridian and received by the United States.
 
 
 28
 1. Appellants have not asserted a proper cause of action
 
 
 29
 Appellants do not have either a cause of action or standing to challenge Interior's grant of a land patent because appellants do not and cannot assert any legal property interest in the land at issue. Appellants seek only to invalidate the exchanged land titles. If a private cause of action does not exist in favor of a particular plaintiff, the standing issue need not even be addressed. National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 456, 465 n. 13, 94 S.Ct. 690, 696 n. 13, 38 L.Ed.2d 646 (1974); Raypath, Inc. v. City of Anchorage, 544 F.2d 1019, 1021 (9th Cir.1976). It is well established federal law that a plaintiff must establish his own entitlement to the land before the validity of a land patent may be challenged. See, e.g., Fisher v. Rule, 248 U.S. 314, 318, 39 S.Ct. 122, 123, 63 L.Ed. 263 (1919); St. Louis Smelting and Refining Co. v. Kemp, 104 U.S. (14 Otto) 636, 647, 26 L.Ed. 875 (1881); Donnelly v. United States, 850 F.2d 1313, 1320 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 878, 102 L.Ed.2d 1001 (1989); Lee v. United States, 809 F.2d 1406, 1410-11 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988); Raypath, Inc., supra, 544 F.2d at 1021; Kale v. United States, 489 F.2d 449, 454 (9th Cir.1973), cert. denied, 417 U.S. 915, 94 S.Ct. 2617, 41 L.Ed.2d 220 (1974). We have succinctly stated who is a proper party to challenge the validity of a land patent or deed:
 
 
 30
 [T]he validity of a deed or patent from the federal government may not be questioned in a suit brought by a third party against the grantee or patentee. [citations omitted]. Simply stated, a plaintiff in such a case has no cause of action. These holdings are supported by a sound reason. When public lands are conveyed to private individuals, a contractual relationship is created between the Government and the grantee; the integrity of such transactions could be upset if a grantee, by its use of the land, became monetarily liable to an amorphous class of third persons.... Thus, even assuming that the grant to the [patentee] was somehow invalid, or that the [patentee] violated the terms of the deed in some respect, appellants are in no position to complain. They are complete strangers to the title....
 
 
 31
 Raypath, Inc., 544 F.2d at 1021 [footnote omitted].
 
 
 32
 Absent the requisite property interest, appellants have no private cause of action to challenge the grant of Meridian's land patent through their equal value claims. The district court did not expressly rule on this issue and decided the claims on the merits. However, appellants' lack of a private cause of action precludes their claim, and the district court's grant of summary judgment in favor of defendants-appellees on these claims was proper on this ground alone.
 
 
 33
 2. Appellants lack standing to appeal the equal value determination
 
 
 34
 In addition, appellants do not have standing to challenge the equal value determination of Interior and thus neither the district court nor this court has jurisdiction to hear that issue. Although the district court ruled that plaintiffs-appellants did have standing and ruled on the merits of their equal value claims, the standing issue is jurisdictional and must be addressed before this court can reach the merits of the claim. Fair v. Environmental Protection Agency, 795 F.2d 851, 853 (9th Cir.1986). Since the standing issue goes to the district court's subject matter jurisdiction, it is a matter of law reviewablede novo. United States v. City of Twin Falls, Idaho, 806 F.2d 862, 866 (9th Cir.1986), cert. denied, 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987).
 
 
 35
 The district court found that plaintiffs-appellants had standing to sue, relying primarily on its decision in National Wildlife Federation v. Burford, 677 F.Supp. 1445, 1453-56 (D.Mont.1985), appeal argued and submitted (February 1989) (9th Cir. No. 87-4375). 675 F.Supp. at 1241. There, the district court held that plaintiffs who lived in impacted communities had standing to challenge allegedly underpriced coal leases because fewer federal funds would be available under the revenue sharing act to mitigate the adverse environmental and socioeconomic effects of the coal development. 677 F.Supp. at 1455-56; 30 U.S.C. sections 191, 201(a)(3)(C). It is the environmental interest protected by 30 U.S.C. section 191 which confers standing to sue upon appellants. Merely alleging injury to their status as taxpayers (i.e., fewer federal funds from the coal development would result in higher taxes for appellants) does not confer standing because it does not create an interest in favor of appellants distinguishable from that of the general public. Sheldon v. Griffin, 174 F.2d 382, 384 (9th Cir.1949).
 
 
 36
 To assert standing to sue, appellants must show with reasonable precision the linkage between the challenged policy and the asserted injury. Wilderness Society v. Griles, 824 F.2d 4, 12-17 (D.C.Cir.1987). Mere conjecture demonstrating potential injury is not sufficient. O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). Appellants have not alleged an injury related to Interior's equal value determination; they merely state that Interior's decision might consequently cause the revenue loss appellants envision once coal development occurs. Appellants have failed to provide any declarations, affidavits, or other evidence that the federal tract was worth less after the exchange than it was before the exchange. Only if the federal holdings decreased in value would the federal revenue sharing funds be affected under 30 U.S.C. section 191. In fact, Interior found that the federal tract increased in value. Appellants put forward no evidence to contradict this finding. Thus, appellants have not demonstrated the requisite injury to assert standing, and their appeal on these claims must be dismissed on these jurisdictional grounds as well.
 
 
 37
 C. Interior's interpretation that the exchange conformed with the operative federal land use plan and did not require BLM to amend the existing Redwater Management Framework Plan.
 
 
 38
 Appellants contend that the exchange does not conform with the Redwater Management Framework Plan ("MFP"), the operative federal land use plan. Appellants contend that the MFP bars the exchange because that document only provides a land use plan for coal leasing, and does not expressly provide for an exchange.
 
 
 39
 The applicable regulations are 43 C.F.R. sections 1601, 2200.1(a), and 2200.2(b). To conform with the public land use plan, "a resource management action shall be specifically provided for in the plan, or if specifically mentioned, shall be clearly consistent with the terms, conditions, and decisions of the approved plan or plan amendment." 43 C.F.R. 1601.0-5(c). The exchange regulations provide that federal lands may be exchanged where "disposal is in conformance with the land use planning provisions contained in Subpart 1601." 43 C.F.R. section 2200.1(a)(1984).
 
 
 40
 The MFP states that coal in the Circle West area could be considered for leasing, that licenses to mine coal there could be issued, and that development could be allowed. The Decision Document/Lands Report relies on Decision 5.1 of the Redwater MFP to support its conclusion that BLM was not required to amend the existing MFP prior to the Circle West exchange. This decision was concurred in by the BLM State Director and by the Assistant Secretary of Interior in the September 1983 Decision Document on Protests.
 
 
 41
 The district court found BLM's interpretation of the MFP, and Interior's subsequent determination that the exchange conformed with the MFP, to be a reasonable interpretation of its own regulations:
 
 
 42
 At the heart of the Circle West exchange is the facilitation of coal development, the United States possessing a unified area so as to promote coal leasing. As stated in [Interior's] Decision Document/Lands Report:
 
 
 43
 "Development" clearly indicates coal leasing and provision for site development. The coal exchange proposal is an alternative method to achieve both the lands and minerals objectives reached in the [Redwater] plan.
 
 
 44
 In short, the Court cannot say that the Circle West exchange is inconsistent or not otherwise in conformance with the REdwater [sic] MFP. The Interior's reasonable interpretation that its own regulation was satisfied is conclusive.
 
 
 45
 675 F.Supp. at 1247 (reference and citation omitted).
 
 
 46
 This factual determination can only be overturned on review if it is clearly erroneous. Vesey v. United States, 626 F.2d 627, 629 (9th Cir.1980). An agency's interpretation of its own regulations can only be overturned if "plainly erroneous" or clearly inconsistent with the regulation. Marathon Oil Co. v. United States, 807 F.2d 759, 765 (9th Cir.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). Appellants have not met this heavy burden. The exchange action need not be specifically mentioned, so long as it is clearly consistent with the plan. 43 C.F.R. section 1601.0-5. Though appellants argue that the MFP was merely a preliminary decision, the MFP was in fact a final decision that coal mining and leasing could occur. Finally, appellants mistakenly contend that the exchange must conform to Section 206 of FLPMA. That section requires only a public interest determination by Interior, and does not require Interior to issue a conforming land use plan. 43 U.S.C. section 1716. Thus, since appellants have not met their burden of demonstrating clear error by the district court, we affirm the district court's finding that Interior reasonably interpreted the exchange to conform with the existing MFP, and that no amendment to the existing MFP was required prior to the exchange.
 
 D. Summary
 
 47
 In sum, we find that the district court properly held that the Circle West exchange complied with the National Environmental Policy Act requirements regarding adequate environmental impact analyses. As to the equal value claim, appellants have no private cause of action to invalidate the Circle West exchange because they cannot assert any fee interest in the land at issue. Moreover, appellants lack standing to raise the equal value determination on the record presented on this appeal. Finally, the district court properly upheld the Department of the Interior's determination that the Circle West Exchange conformed with the existing land use plan.
 
 
 48
 AFFIRMED.
 
 
 
 *
 Manuel Lujan, Jr., the current Secretary of the Interior, is substituted in for former Secretary of the Interior Donald P. Hodel pursuant to F.R.App.P. Rule 43(c)(1)
 
 
 **
 Honorable Dickran Tevrizian, United States District Judge, Central District of California, sitting by designation