**THE ISLAND RANGE CHAPTER OF THE MONTANA WILDERNESS, et al., Plaintiffs,**

v.

**UNITED STATES FOREST SERVICE, and Dale Gorman, Forest Supervisor, Defendants.**

**No. CV–94–062–GF.**

United States District Court,
D. Montana,
Great Falls Division.

Aug. 21, 1996.

Dennis J. Tighe, Davis, Hatley, Haffeman & Tighe, PC, Great Falls, MT, Howard F. Strause, Strause Law Office, Great Falls, MT, Stuart F. Lewin, Lewin Law Office, Great Falls, MT, for Island Range Chapter of the Montana Wilderness Association, American Wildlands, Russell Country Sportsmen, John Ressler, Stuart Lewin.

George F. Darragh, Jr., Office of the U.S. Attorney, Great Falls, MT, John Potter, Jr., Potter Law Office, White Sulphur Springs, MT, Allison Rumsey, U.S. Department of Justice—E.N.R.D. General Litigation, Washington, DC, for United States Forest Service.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

The above-entitled action has its genesis in the United States Forest Service's decision to proceed with a timber sale in the Smokey–Corridor area of the Little Belt Mountains in the Lewis and Clark National Forest. Plaintiffs, Island Range Chapter of the Montana Wilderness Association, American Wildlands, Russell County Sportsmen, John Ressler and Stuart Lewin, instituted the above-entitled action for declaratory and injunctive relief, alleging the Forest Service's decision to proceed with the sale is violative of the National Forest Management Act, 16 U.S.C. §§ 1600 *et seq.*, the Clean Water Act, 33 U.S.C. § 1365, and the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* Presently before the court is the Forest Service's motion for summary judgment, pursuant to Fed.R.Civ.P. 56.[1] Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

### BACKGROUND

In 1986, the Forest Service, in accordance with the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.*,[2] implemented a land and resource management plan for the Lewis and Clark National Forest. The plan divided the Lewis and Clark National Forest into nineteen management areas, each with different management goals.

In 1991, the Forest Service initiated plans for the Smokey–Corridor timber sale project. Recognizing the proposed action was a "major federal action significantly affecting the environment,"[3] the Forest

---

1. Contemporaneous with the filing of their amended complaint, plaintiffs moved the court, pursuant to Fed.R.Civ.P. 65, for a preliminary injunction, urging the court to enjoin the Forest Service from awarding any contracts for the timber sale at issue. On January 12, 1995, the court heard oral argument on plaintiffs' motion for a preliminary injunction, as well as the defendants' motion for summary judgment.

2. The NFMA directs the Forest Service to develop, maintain and revise comprehensive land and resource management plans for units of the National Forest System. 16 U.S.C. § 1604(a). Each plan must "provide for multiple use and sustained yield of the products and services obtained [from a National Forest] in accordance with the Multiple Use Sustained Yield Act of 1960 [16 U.S.C. §§ 528–531], and, in particular, include coordination of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness." 16 U.S.C. § 1604(e)(1). Each forest plan is accompanied by an Environmental Impact Statement prepared in accordance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* *See also*, 36 C.F.R. § 219.12.

3. NEPA requires federal agencies to prepare an Environmental Impact Statement ("EIS") for all "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EIS analyzes the environmental impact of a proposed

Service began preparing an EIS to address the project's environmental consequences. The draft EIS for the Smokey–Corridor timber project was released in July, 1993.

On January 28, 1994, the Forest Supervisor for the Lewis and Clark National Forest issued a Record of Decision ("ROD") approving the Smokey–Corridor timber sale project, as set forth in the final EIS. The project envisions five timber sales resulting in the harvesting of 2,999 acres of land, the obliteration of 7.8 miles of road, yearlong restrictions with respect to 36 miles of road within the National Forest, and the closure of 9.3 miles of road from September to December. In addition, the final EIS calls for the construction of 2.2 miles of new roads and the reconstruction of 18.6 miles of roads. The timber sale at issue herein, the Smokey B timber sale, is the first sale scheduled in accordance with the project, and will necessitate 1.1 miles of road reconstruction and 1.8 miles of road construction.

Plaintiffs filed administrative appeals of the Smokey–Corridor final EIS and ROD. The Deputy Regional Forester denied plaintiffs' administrative appeal and, on July 18, 1994, plaintiffs instituted the present action for declaratory and injunctive relief. Plaintiffs invoke the jurisdiction of this court pursuant to 28 U.S.C. § 1331, in conjunction with 28 U.S.C. §§ 2201 and 2202.

## DISCUSSION

### A. National Environmental Policy Act

#### 1. Background

The National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., seeks to ensure federal agencies carefully evaluate the potential environmental consequences of proposed actions. 42 U.S.C.

§ 4332; 40 C.F.R. § 1501. NEPA requires the preparation of an EIS under certain circumstances to ensure each agency considers all possible approaches to a particular project (including total abandonment of the project) which would alter the environmental impact and the cost benefit balance. *All Indian Pueblo Council v. United States,* 975 F.2d 1437, 1444 (10th Cir.1992). An EIS is one of the devices that NEPA mandates in order to effect "a broad national commitment to protecting and promoting environmental quality." *Id., quoting, Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 348, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989).

■ An EIS must contain, *inter alia,* a detailed statement regarding alternatives to the proposed action. *Havasupai Tribe v. United States,* 752 F.Supp. 1471, 1490 (D.Ariz.1990), *citing, Citizens for a Better Henderson v. Hodel, supra,* 768 F.2d at 1057; 42 U.S.C. § 4332(2)(c)(iii). The discussion of alternatives is "the heart of the environmental impact statement." 40 C.F.R. § 1502.14. Consequently, an agency must examine every reasonable alternative, with the range dictated by the "nature and scope of the proposed action," *State of California v. Block,* 690 F.2d 753, 761 (9th Cir.1982), to permit a "reasoned choice." *Methow Valley Citizens Council v. Regional Forester,* 833 F.2d 810, 815 (9th Cir.1987), *reversed on other grounds sub. nom., Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). *See also,* 40 C.F.R. § 1502.14(a) (agency must "rigorously explore and objectively evaluate all reasonable alternatives.").

#### 2. Scope of Review

■ As the Supreme Court has noted, "it is now well settled that NEPA itself

action, describes adverse environmental effects which cannot be eliminated and lists alternatives to the proposed action. 42 U.S.C. § 4332(2)(C). An EIS serves two purposes: (1) to provide decision makers with enough information to aid in the substantive decision whether to proceed with a project in light of its environmental consequence; and (2) to provide the public with information and an opportunity to participate in gathering information. *Citizens for a Better Henderson v. Hodel,* 768 F.2d 1051, 1056 (9th Cir.1985); *State of California v. Block,* 690 F.2d 753, 761 (9th Cir.1982); 40 C.F.R. § 1502.1.

does not mandate particular results, but simply prescribes the necessary process." *All Indian Pueblo Council, supra,* 975 F.2d at 1445, *quoting, Robertson, supra,* 490 U.S. at 350, 109 S.Ct. 1835. Consequently, judicial review of an agency's action in preparing an EIS is focused upon whether the agency adequately considered and disclosed the environmental impact of its action, and that its decision was not arbitrary and capricious. *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1435 (9th Cir.1988).

> This circuit employs a "rule of reason" [test] that asks whether an EIS contains a reasonably thorough discussion of the significant aspects of the probable environmental consequences. A reviewing judge must make a pragmatic judgment whether the EIS's form, content and preparation foster both informed decision making and informed public participation.... Once satisfied that a proposing agency has taken a "hard look" at a decision's environmental consequences, the review is at an end.

*Resources, Ltd. v. Robertson,* 8 F.3d 1394, 1400 (9th Cir.1993), *quoting, Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1519 (9th Cir.1992).

■ Accordingly, a reviewing court is not free to impose its judgment on an agency, *Havasupai Tribe v. United States, supra,* 752 F.Supp. at 1490, nor "fly speck" an EIS and hold it insufficient on the basis of inconsequential, technical deficiencies. *Oregon Environmental Council v. Kunzman,* 817 F.2d 484, 492 (9th Cir.1987). However, an EIS may be found inadequate under NEPA if it does not reasonably set forth sufficient information to enable the decision maker to consider the environmental factors and make a reasoned decision. *Id.* at 493.

In the case *sub judice,* plaintiffs maintain the final EIS for the Smokey–Corridor timber project is violative of the NEPA because it fails to adequately address (1) a reasonable range of alternatives; (2) the cumulative impacts of the timber sale and related road construction; and (3) the project's impact on elk viability. In addition, plaintiffs contend a number of significant differences between the timber sale outlined in the final EIS and what is actually being sold necessitates the preparation of a supplemental EIS.

### 3. *Range of Alternatives*

Plaintiffs maintain the subject EIS fails to examine a reasonable range of alternatives for road or area closures in the project area. Specifically, plaintiffs maintain the final EIS should have included alternatives with varying amounts and types of road closures so as to improve wildlife habitat. In addition, plaintiffs assert the Forest Service failed to analyze an alternative that would have utilized a timber harvesting method other than clearcutting.

■ NEPA requires an agency consider a reasonably full range of alternatives to a proposed action. *Citizens for a Better Henderson, supra,* 768 F.2d at 1057. *See also,* 42 U.S.C. § 4332(2)(c)(iii). An agency's range of alternatives is reviewed under a "rule of reason" standard that "requires an agency to set forth only those alternatives necessary to permit a reasoned choice." *California v. Block, supra,* 690 F.2d at 767 ("the touchstone for [a court's] inquiry is whether an EIS's selection and discussion of alternatives fosters informed decision-making and informed public participation"). Additionally, NEPA does not require a separate analysis of alternatives which are not significantly distinguishable from alternatives actually considered or which have substantially similar consequences. *Northern Plains Resource Council v. Lujan,* 874 F.2d 661, 666 (9th Cir.1989). As a result, an agency's consideration of alternatives is sufficient if it examines an appropriate range of alternatives, even if it does not consider every available alternative. *Headwaters, Inc. v. Bureau of Land Management,* 914 F.2d 1174, 1181 (9th Cir.1990).

■ Finally, NEPA does not require an agency to consider alternatives which do not achieve the purpose of the proposed action. *Sierra Club v. Robertson,* 845 F.Supp. 485, 500 (S.D.Ohio 1994). As a result, a reviewing court's inquiry is whether the agency adequately considered alternatives "reasonably related to the purpose of the project." *Id., quoting, Northwest Coalition for Alternatives to Pesticides v. Lyng,* 844 F.2d 588, 593 (9th Cir.1988).

■ In the case *sub judice,* the Smokey Corridor final EIS considered a "no action" alternative and six "action" alternatives, all of which encompassed varying degrees of timber harvest and road construction. In addition, a number of other alternatives were considered during the Forest Service's analysis, but were dropped from detailed study for various reasons. In this court's opinion, the range of alternatives considered in the final EIS more than satisfied the requirement that the Forest Service "set forth only those alternatives necessary to permit a reasoned choice." *See, Headwaters, Inc., supra,* 914 F.2d at 1180, *quoting, California v. Block, supra,* 690 F.2d at 767. Plaintiffs' argument to the contrary is unpersuasive.

### 4. *Cumulative Impacts*

■ Plaintiffs next assert the final EIS failed to consider the cumulative impact of the proposed timber sale and related road construction on the fisheries in the area and the resultant habitat fragmentation on wildlife. In response, defendants maintain the final EIS' analysis of the cumulative impacts of the proposed timber sale was complete, cogent and well documented.

Regulations promulgated under NEPA provide an EIS must consider "[i]mpacts, which may be (1)[d]irect; (2) indirect; [or] (3) cumulative." 40 C.F.R. § 1508.25(c). A "cumulative impact" is defined as:

[t]he impact on the environment which results from the incremental impact of the actions when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) ... or person undertakes such actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.

40 C.F.R. § 1508.7. *See also, Thomas v. Peterson,* 753 F.2d 754, 758 (9th Cir.1985) (a single EIS is required to account for actions which individually have an insignificant environmental impact, but which collectively have a substantial impact).

Having reviewed the record herein, the court is compelled to conclude plaintiffs have failed to advance a persuasive argument, supported by recognized authority, in support of their position. The administrative record reflects the defendants adequately addressed the cumulative impacts of the proposed timber sale, as well as the consequences of reasonably foreseeable actions.

### 5. *Elk Viability*

■ Plaintiffs next contend the final EIS and the preferred alternative discussed therein adopt management standards that are inadequate to ensure elk viability in the project area. Plaintiffs' contention is predicated primarily upon the Forest Service's purported failure to adopt a particular standard, *i.e.,* the "Hillis standard," for calculating elk security.

The record reflects the maintenance of existing elk security areas within the project area was a major consideration in the development of the preferred alternative as set forth in the final EIS. The Forest Service focused on a number of areas, including elk travel corridors, hiding cover, displacement areas and vulnerability, in the preparation of the EIS. Consequently, the administrative record reflects the defendants took the requisite "hard look" at elk viability, giving a thorough evaluation of the habitat needs of the elk and the impact of the proposed timber project thereon. Plaintiffs' arguments to

the contrary are unpersuasive. Moreover, plaintiff have failed to advance a cogent argument, supported by any recognized authority, establishing any requirement that the Forest Service adopt the "Hillis Standard" for determining elk security.

### 6. *Supplementation of the EIS*

Plaintiffs also allege the defendants violated NEPA by failing to file a supplemental EIS, given the discrepancies between the final EIS and ROD and the forest plan for the Lewis and Clark National Forest. Plaintiffs maintain the changes implemented in the final EIS created significant new circumstances which should have been analyzed in a supplemental EIS prior to any decision to proceed with the timber sale project.

■ An agency is not free to ignore the possible significance of new information. Rather, NEPA requires that the agency take a "hard look" at the new information to determine whether a supplemental EIS is necessary. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 374, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). An agency must supplement either a draft or final environmental impact statement if "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii). Agencies must employ a "rule of reason" in determining whether to prepare a supplemental EIS.

> [A]n agency need not supplement an EIS every time new information comes to light.... If there remains "major Federal actio[n]" to occur, and if the new information is sufficient to show that the remaining action will "affec[t] the quality of the human environment"

in a significant manner or to a significant extent not already considered, a supplemental EIS must be prepared.

*Marsh, supra,* 490 U.S. at 373–74, 109 S.Ct. 1851.

■ Plaintiffs contend major changes have been made in the size and location of the timber harvest units, as well as the amount of roads to be reconstructed in connection with the proposed action, thereby necessitating the preparation of a supplemental EIS. In response, the Forest Service maintains the differences are relatively small and well within the effects considered in the range of alternatives discussed in the final EIS.

Having reviewed the administrative record, together with the arguments advanced by the parties in support of their respective positions, the court is compelled to conclude the Forest Service considered all relevant factors and did not act arbitrarily or capriciously in determining a supplemental EIS was not required. Plaintiffs' argument to the contrary is unpersuasive.

### B. *National Forest Management Act*

### 1. *Background*

The National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.,* directs the Secretary of Agriculture to develop, maintain and revise long range management plans ("LRMPs") to define the "management direction" for units of the National Forest System. 16 U.S.C. §§ 1604(a); 36 C.F.R. §§ 219.1(b), 219.3. An LRMP serves to ensure the multiple use and sustained yield of goods and services from the National Forest System in a way that maximizes longterm net public benefits in an environmentally sound manner.[4] 36 C.F.R. § 219.1(a). Accordingly,

---

4. The Multiple–Use Sustained Yield Act of 1960, 16 U.S.C. §§ 528–531, requires LRMPs provide for the multiple-use and sustained yield of the products and services obtained from a national forest. *Citizens for Environmental Quality v. United States,* 731 F.Supp. 970, 976 (D.Colo.1989). "Multiple use", in

the forest context, refers to, *inter alia,* the following uses: .outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness. *Citizens for Environmental Quality, supra,* 731 F.Supp. at 976 n. 3, *citing,* 16 U.S.C. § 1604(e)(1). The multiple-use standard directs the Secretary of Agriculture to

an LRMP constitutes a program for all natural resource management activities, *i.e.*, identifying resource management practices, projecting levels of production of goods and services, and identifying locations where various types of resource management may occur, and establishes management requirements to be utilized in implementing the program. *See, Citizens for Environmental Quality, supra,* 731 F.Supp. at 977.

The NFMA envisions a two-stage approach to forest planning. *Inland Empire Public Lands Council v. United States Forest Service,* 88 F.3d 754 (9th Cir.1996). During the first stage, "a team … develops a proposed [LRMP] together with a draft and final EIS."[5] *Idaho Conservation League v. Mumma, supra,* 956 F.2d at 1511, *citing,* 36 C.F.R. § 219(a) & (b). Once the LRMP is approved, "[d]irect implementation of the LRMP occurs at a second stage, when individual site-specific projects are proposed and assessed." *Id.* at 1512. The site-specific projects must be consistent with the stage-one, forest-wide LRMP. *Id. See also, Sierra Club v. Espy,* 38 F.3d 792, 795 (5th Cir.1994) ("Site specific analysis … must be consistent with the LRMP."); 16 U.S.C. § 1604(i) ("Resource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans."); 36 C.F.R. § 219.10(e) ("[T]he Forest Supervisor shall ensure that … all outstanding and future permits, contracts, cooperative agreements, and other instruments for occupancy and use of affected lands are consistent with the plan.").

In the case *sub judice,* plaintiffs assert the final EIS for the Smokey Corridor timber project is violative of the NFMA based upon (1) a failure to accurately calculate "old growth" forest; and (2) a fail-

ure to ensure viability of management indicator species, namely, elk and westslope cutthroat trout.

### 2. *Old Growth Forest*

Plaintiffs assert the Smokey–Corridor final EIS fails to follow the standards, as set forth in the Lewis and Clark National Forest's LRMP, for the management of old growth forest. Specifically, plaintiffs maintain the Forest Service's measurement of old growth was inadequate because an outdated form was utilized in making the old growth determination and, furthermore, the Forest Service relied upon old inventory data. Plaintiffs further assert the LRMP precludes timber harvesting in compartments which contain less than five percent of old growth.

This court must defer to agency expertise on questions of methodology unless the agency has completely failed to address some factor, "consideration of which was essential to a truly informed decision…." *Inland Empire Public Lands Council v. Schultz,* 992 F.2d 977, 981 (9th Cir.1993), *quoting, Greenpeace Action v. Franklin,* 982 F.2d 1342, 1352 (9th Cir.1992). "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh, supra,* 490 U.S. at 378, 109 S.Ct. 1851. "NEPA does not require that [the court] … resolve disagreements among various scientists as to methodology…. Our task is simply to ensure that the procedure followed by the [agency] resulted in a reasoned analysis of the evidence before it, and that the [agency] made the evidence available to all concerned." *Oregon Envi-*

coordinate management of the uses, giving consideration to the relative values thereof. *Id., citing,* 16 U.S.C. § 531; 36 C.F.R. § 219.3.

**5.** The NFMA requires the Secretary of Agriculture, in preparing an LRMP, to comply with the NEPA, which, in turn, encompasses the duty to prepare an appropriate environmental impact statement ("EIS"). *Mumma, supra,* 956 F.2d at 1511.

*ronmental Council v. Kunzman, supra,* 817 F.2d at 496.

■ In this court's opinion, plaintiffs have failed to advance a persuasive argument establishing the Forest Service abused its discretion or acted in a arbitrary and capricious manner in analyzing old growth timber in the project area. The administrative record establishes the Forest Service took the necessary steps to monitor old growth when evaluating the proposed timber project. The Forest Service employed a solid methodology for calculating old growth based upon the best information available, and verified the results through field analysis.

### 3. *Management Indicator Species*

■ Plaintiffs next contend the final EIS fails to adequately provide for viable populations of certain management indicator species, namely, elk and westslope cutthroat trout. In addition, plaintiffs maintain the Forest Service violated the NFMA by failing to obtain and maintain current data pertaining to elk inventory in the project area.

The NFMA imposes substantive duties on the Forest Service, one of which is the duty to "provide for diversity of plant and animal communities." 16 U.S.C. § 1604(g)(3)(B). Accordingly, Forest Service regulations require that "[f]ish and wildlife habitat shall be managed to maintain viable populations of existing native and desired non-native vertebrate species in a planning area." 36 C.F.R. § 219.19. Accordingly,

> habitat must be provided to support, at least, a minimum number of reproductive individuals and that habitat must be well distributed so that those individuals

can interact with others in the planning area.

*Id.*[6]

Regulations promulgated under NFMA require the Forest Service to estimate and monitor the effect of forest management on the populations of certain "management indicator species." 36 C.F.R. § 219.19(a)(1)–(7). These species, which may be plant or animal, vertebrate or invertebrate, must include those species whose "population changes are believed to indicate the effects of management activities...." 36 C.F.R. § 219.19. Once an indicator species is selected, the Forest Service is obligated to evaluate planning alternatives for projects that affect that species "in terms of both amount and quality of habitat and of animal population trends of the management indicator species." *Inland Empire Public Lands Council v. United States Forest Service,* 88 F.3d 754 (9th Cir.1996), *quoting,* 36 C.F.R. § 219.19(a)(2).

Having reviewed the record herein, the court is compelled to conclude the Forest Service's site-specific analysis of the environmental consequences resulting from the proposed project indicate the Forest Service took the requisite "hard look" at the project's impact on elk and westslope cutthroat trout. The Forest Service evaluated the species' viability, developed mitigation measures, and ultimately concluded the proposed action posed no threat to the species' viability. Plaintiffs have failed to advance a persuasive argument, supported by recognized authority, establishing the Forest Service's compliance with the NFMA was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.

### C. *Clean Water Act*

Plaintiffs advance a number of claims under the Clean Water Act, 33 U.S.C.

---

**6.** The duty to ensure viable or self-sustaining populations applies with special force to "sensitive" species. *Oregon Natural Resources Council v. Lowe,* 836 F.Supp. 727, 733 (D.Or. 1993). The Forest Service designated four sensitive species in the project area: the Townsend's big-eared bat, lynx, boreal owl, and the westslope cutthroat trout. A biological evaluation was prepared with respect to all four species.

§ 1365 *et seq.* Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is compelled to conclude defendants' motion for summary judgment is well taken with respect to plaintiffs' claims thereunder. Plaintiffs have failed to articulate a basis upon which to overturn the Forest Service's decision to proceed with the Smokey B timber sale.

*CONCLUSION*

Accordingly, for the reasons set forth herein, the court concludes defendants' motion for summary judgment be, and the same hereby is, GRANTED. Accordingly, plaintiffs' request for preliminary injunctive relief is hereby DENIED.

IT IS SO ORDERED.