MEMORANDUM ORDER AND OPINION
PER CURIAM.
I. Facts
Defendant-Appellant, Jackie Deschu-quette, a Dakota, formerly living in a house (Unit # 502-07) owned by the Plaintiff-Respondent, Cheyenne River Sioux Tribe Housing Authority (“Housing Authority”), appeals an order of eviction issued by the trial court. At the hearing, the Housing Authority argued that Deschu-quette breached several provisions of her lease—that she failed to pay rent for five months, that she kept more than one dog in the house when the lease only permitted one dog, that she did not keep the house in a clean and habitable condition, that she failed to notify the Housing Authority in a timely manner when repairs were needed, and that she failed to maintain the utilities. Deschuquette argued that her non-payment of rent was the result of a faulty heater which resulted in overcharges depleting a governmental program fund that helped pay rent and utilities. On appeal, she argues that the trial court committed reversible error by not continuing the hearing when she expressed her desire to be represented by counsel; that the trial court committed plain error by allowing the description of the case presented by the Housing Authority attorney into the record as evidence; and that the trial court committed reversible error in finding that she breached her lease. In this appeal, the burden of proof is on Deschu-quette to demonstrate that the trial court committed reversible error. E.g. Northern Plains Resource Council v. Lujan, 874 F.2d 661, 669 (9th Cir.1989); National Commodity & Barter Ass’n v. Gibbs, 886 F.2d 1240, 1244 (10th Cir.1989). For the reasons stated below, this court finds that she has not carried her burden.
Deschuquette resided in Unit # 502-07 since March of 1996. Her rent included an offset for utilities, and she received a utility allowance, which was paid directly to the utility company. If the utility bill was less than the allowance, the excess money went to the Housing Authority, to be credited to her rent. In July of 1996, her heater malfunctioned, causing an unusually high heating bill—in excess of the utility allowance. The situation persisted, and because the heating bill remained unpaid, the utilities were turned off. Meanwhile, during the months that her utility bill exceeded her allowance, Deschuquette owed rent in the amount of $53.00 per month, which she did not pay. When Deschu-quette finally notified the Housing Authority that the heater had malfunctioned, the *55 Housing Authority promptly replaced the heater. Deschuquette, however, failed to have the utilities turned back on, and, as a result, her utility allowance was discontinued. Consequently, she owed $53.00 in rent for each month that she allowed the utilities to remain disconnected. Thereafter, she failed to pay any further rent until December of 1996, when the Housing Authority initiated this action. By then, Des-chuquette had failed to pay five months of rent.
At the hearing on the eviction proceeding conducted by the trial court on January 13, 1997, Deschuquette appeared without counsel. She orally requested that the hearing be continued until she could obtain counsel. Her request was refused. In his order, Chief Judge Curtis Carroll found that Deschuquette had breached the terms of her lease and ordered her to vacate the premises within 30 days. Because of the extremely harsh winter weather conditions, however, this Court stayed the order through April 1997, at which point the stay was dissolved and Deschuquette presumably was evicted.
II. Deschuquette’s Demand for a Continuance to Secure Representation
Deschuquette argues that the trial hearing should have been continued because she was unrepresented by counsel. Acknowledging that under both the law of the Cheyenne River Sioux Tribe and the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302, there exists no right to counsel in a civil suit, Deschuquette nevertheless asserts that because an eviction is a matter of law and equity, she was entitled to have the hearing continued until her counsel was present.
No constitutional or statutory provision entitles a party in a civil case to the right to counsel. In the federal legal system, 28 U.S.C.1915(e)(1) authorizes a federal judge to appoint counsel in a civil case where a party is indigent and proceeding in forma pauperis. Ordinarily, in a federal civil case, counsel will be appointed only if it would be fundamentally unfair not to appoint counsel. McCarthy v. Weinberg, 753 F.2d 836, 838 (10th Cir.1985). See also Heidelberg v. Hammer, 577 F.2d 429 (7th Cir.1978); Gordon v. Leeke, 574 F,2d 1147 (4th Cir.1978). The Tenth Circuit lists three factors the court should consider when deciding whether to appoint counsel in a civil suit: if it is likely that the testimony will be conflicting; if the court feels the party is incapable of presenting the case; and if the legal issues are complex. Id. at 839. See also Manning v. Lockhart, 623 F.2d 536 (8th Cir.1980); Marlin v. Freake, 650 F.2d 885 (7th Cir.1981). The Cheyenne River Sioux Tribal Courts have also been willing to appoint counsel in appropriate cases for indigents. Indeed, it is a precondition to admission to the bar of the Cheyenne River Sioux Tribe that an applicant indicate a willingness to take such appointed cases pro bono. In this case, for example, this Court requested Mr. Al Arendt to represent Deschu-quette on appeal and he performed that role both willingly and with great skill, an undertaking this Court deeply appreciates. While the federal standards stated above are not strictly applicable to this case since the matter is governed by tribal, rather than federal, law, they are nevertheless instructive here in advising this Court whether any gross abuse of Deschu-quette’s rights occurred when the eviction proceeding went forward without counsel.
In the present case, the record indicates that the testimony was not contradictory or complex. Deschuquette did not assert that she had paid the rent; she did not deny that she had more than one dog or that the house was unclean, that she *56 waited two months before contacting the Housing Authority about the damaged heater, or that she did not have the utilities reconnected. Similarly, the trial court had no reason to think that Defendant was incapable of presenting her case. Finally, no complex legal issues were involved. Consequently, the trial court did not abuse its discretion by not allowing a continuance.
Furthermore, this ease technically does not involve a defendant requesting that counsel be appointed to represent her. Neither does it involve the unusual case where a party has secured representation and through some unforeseen occurrence the attorney of record fails to appeal on the date of the hearing without appropriately moving for a continuance. In such circumstances, trial courts ought to be reasonably reticent to force a represented party to trial in the absence of the attorney of record for the party. Here, however, Deschuquette had no attorney of record and was not really asking the trial court to appoint one for her. Rather, Des-chuquette previously had sought representation from Dakota Plains Legal Services, but failed to follow through on that request. The Housing Authority’s brief attached an affidavit from Raylene Frazier, a lay advocate employed by Dakota Plains Legal Services Corporation, indicating that Ms. Frazier told Deschuquette to notify her if and when she received an indication of the filing of an eviction proceeding. Deschuquette apparently failed to do so. Instead, she called Ms. Frazier after the hearing had already begun, then asked the court for a continuance because Ms. Frazier could not be present. In this case, Deschuquette had more than ample time prior to the healing to fully advise any potential counsel of the filing and nature of the proceeding and to assure representation at the hearing and assure that any potential counsel file an appearance in the proceeding. In this case, her lack of representation at the eviction proceeding appeal’s due entirely to her own neglect.
A continuance is granted only when a person’s presence is necessary, or when a person’s absence is unavoidable and involuntary, but the person will be able to attend at some time in the near future. Bowsman v. Peterson, 45 F.Supp. 741, 742 (D.Neb.1942) (quoting 17 C.J.S., Continuances, sec. 27, p. 210). At the hearing, it was not necessary that a counsel for Des-chuquette be present: Defendant could and did appear pro se and represent herself. Additionally, no counsel representing Deschuquette was present at the trial hearing because Deschuquette failed to timely notify her potential counsel of the initiation of the proceeding and the date of the hearing. Such a reason does not qualify as “unavoidable and involuntary.” Finally, it is not apparent from the record that Deschuquette’s chosen counsel at the time of the hearing (i.e., Dakota Plains Legal Services) would be able to attend even a postponed hearing, because prior demands on Legal Services prevented her from undertaking the representation. Indeed, this Court attempted to appoint Ms. Raylene Frazier (a paralegal who has admirably represented clients before this Court in the past) to represent Deschu-quette on appeal, only to learn that the Dakota Plains Legal Services office which employs her had experienced a drastic reduction in funding and staff and could not undertake any new cases. Consequently, Defendant has failed to sustain her burden of proving that the trial court erred in denying her request for a continuance.
III. Admission of Evidence
Deschuquette argues that recitation of the facts by the attorney for the Housing Authority was hearsay and that *57 the trial court incorrectly relied on that recitation as evidence. The transcript of the trial, however, clearly indicates that Plaintiff’s “recitation of the facts” was nothing more than an opening statement, or “an outline or summary of the nature of the case and of anticipated proof presented by attorney ... before any evidence is submitted.” Black’s Law Dictionary. See also State v. Fleming, 523 S.W.2d 849, 852 (Mo.App.1975); State v. Fénix, 311 S.W.2d 61 (Mo.App.1958). The court afforded Deschuquette an opportunity to present her own opening statement, which she declined. In addition, the court questioned both the witnesses for Deschuquette and the Housing Authority in the course of their testifying. Nothing in the court’s order indicates that the trial court relied on anything in Plaintiffs opening statement that was not fully corroborated and substantiated by testimony or other evidence. Thus the trial court did not commit any reversible error in listening to the Housing Authority’s opening statement.
IV. Breach of Lease
Deschuquette also argues that there was a “clear inadequacy of foundational material” to support the contention that she breached her lease. She argues that no lease provisions were offered into evidence or cited in any of the testimony. During the course of Deschuquette’s testimony, the court asked her if she lived in the house in question “pursuant to this lease you have with the Housing Authority,” indicating that the trial court did have the lease before it (although perhaps not formally entered into evidence, as it should have been). Additionally, the trial transcript contains testimony from two witnesses reflecting lease violations. A Housing Authority maintenance man/electrician testified, in relevant part, that the house was dirty, that the utilities were not connected, and that he had seen three or four dogs in the house. The MIS Director of the Housing Authority testified, in relevant part, that Deschuquette’s rent was $53.00 per month, that she owed five months’ rent, and that Deschuquette was not charged for the excess utility costs (due to the malfunction) or for the repair work.
Finally, at the hearing, Defendant herself admitted that she had not paid the amount of rent in question under the lease, and that she had three dogs in the house (although two were strays). She did not dispute the lease provisions. Consequently, the court did not commit reversible error in finding evidence of breaches of the lease sufficient to constitute grounds for eviction.
V. Conclusion
Because Deschuquette failed to carry her burden of proring that the tidal court committed reversible error by not continuing the hearing, by allowing Plaintiff to present an account of the case, or by finding that Defendant breached her lease, the order of the trial court should be and hereby is affirmed.
Ho hecetu yelo.
It is so ordered.